FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2012 JAN 13 P 3: 44

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| Janice Wolk Grenadier | |
|---|---|
| Plaintiff, *Pro Se* | |
| v. | Case No. 1:11CV1136 |
| Ed Semonian, Public servant, individually and in his official capacity as Clerk, Circuit Court of Alexandria | JURY TRIAL DEMANDED |
| **Randy Sengel**, Public servant, individually and in his official capacity as **Commonwealth Attorney, City of Alexandria** et al, Defendants | |

## MOTION FOR RULE 11 SANCTIONS ON ALEXANDRIA ATTORNEY SENGEL

1. COMES NOW on Friday, 13 January 2012, Plaintiff Janice Wolk Grenadier (JWG), files this **Motion for Rule 11 Sanctions on Alexandria Attorney Sengel**, as part of the "on papers" hearing of 6 January 2012 of the 21 December 2011 filing of a **PETITION FOR RECONSIDERATION OF "FRIVOLOUS" ORDER OF 9 NOVEMBER 2011 COMPLAINT - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS 18 USC 241 & 42 USC 1983 ILLEGAL ACTIONS TO DENY ACCESS TO GRAND JURY, TRIAL BY JURY.**

2. Having been for YEARS denied Rights as a Citizen by coordinated action of employed public servants of the Courts of the City of Alexandria, namely Defendants Semonian, Sengel, Haddock, and others, **on 21 November 2011, the Chief Justice of the Virginia supreme Court Cynthia Kinser signed an ORDER** assigning Judge Potter of Prince William County to assist the judges of Alexandria by presiding over the monthly session of the Grand Jury, because due to past biases against the Plaintiff, all the Alexandria judges were forced to recuse from the case. **(Exhibit A)**

3. On 4 January 2012, Alexandria Attorney Defendant Sengel "went behind the back" of the Chief Justice with a letter to Judge Potter asking him to ignore the supreme Court ORDER and refuse to allow the Plaintiff to make a Presentment before the City of Alexandria Grand Jury on 13 February. **(Exhibit B)**

4. **Exhibit C** are letters from an equivalent State's Attorney for Howard County, Maryland, an equivalent position to that held by Defendant Sengel as Alexandria Commonwealth Attorney, showing service and assistance to a Citizen seeking to speak to his Grand Jury.

5. Exhibit B by Defendant Sengel was NOT an argument made in accord with FRCP Rule 11:

- (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

  Defendant Sengel does not mention to Judge Potter, nor include as attachments, the prior letters with valid legal arguments based on the Code of Virginia received in early October 2011.

- (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

  Defendant Sengel has been causing unnecessary delay, increasing the cost of litigation to the Plaintiff, and to the taxpayers who pay him by his waste of time, since before the letter of 27 September from the Plaintiff asking him to perform his DUTY to convene a Special Grand Jury.

- (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

  Defendant Sengel has arrogantly ignored first the Code of Virginia regarding the Right of Citizens to "petition the government for a redress of grievances" by way of a presentment to the Grand Jury, and then ignored the ORDER of the Chief Justice and cover letter from the Executive Secretary of the Virginia supreme Court for the Plaintiff to appear on 13 February 2012.

6. The taxpayer paid Alexandria public prosecutor, Defendant Randy Sengel, has "under the color of law" both refused to prosecute charges of Forging, Uttering, and Forging Public Documents against powerful, politically connected Defendant Ilona Ely Grenadier, and has AGAIN interfered with the access of a Citizen to the Private Citizens (no lawyers) of the Alexandria Grand Jury.

7. On Page 26 of the January 1978 issue of the **ABA Journal** (see Exhibit D) is written:

> **In London, responding to a question, Chief Justice Burger said,**
> *"Our discipline is barely something more than non-existent; discipline of lawyers for misconduct is in an abysmal state in our country."*

In Virginia, in the decades since, there has been no progress to correct this abysmal state of lawyer discipline by the Defendants Davis or McCauley, or their employer, the Virginia State Bar. This case is but the "tip of the iceberg" of covered-up crimes by VSB of its members. Sanctions imposed by this federal Court may be the "tonic" to heal the sickness of the Virginia State Bar disciplinary process that is both a sham and illegal "separate tribunal".

8. Defendants Sengel & Haddock were sent letters on September 27, 2011 asking for a Special Grand Jury under Virginia Code 192.2-191, plus that the October 2010 edition of the Virginia Supreme Court Handbook for Grand Jurors Section 23 titled "Convening states".

   1. **"Any citizen or group of citizens may ask the Circuit Court of a city or county to convene a Special Grand Jury."**

9. Judge Haddock ignored my letter and Randy Sengel sent Plaintiff a letter on September 29, 2011 ~ Stating he "Respectfully decline to do so."

10. Plaintiff than filed a Praecipe to the ALEXANDRIA CIRCUIT COURT for Plaintiff to be allowed to go in front of the regular grand jury on October 11, 2011.

11. On October 5, 2011 Plaintiff received a letter from Mr. Sengel informing Plaintiff she was not one of his witness's and refused to allow Plaintiff in front of the Regular Grand Jury.

12. October 6, 2011 Plaintiff then wrote to Edward Semonian Clerk of Court ~ City of Alexandria reminding Mr. Semonian of his duties to allow Plaintiff in front of the Regular Grand Jury. That it is not Mr. Sengel's decision who goes in front of the Regular Grand Jury - but rather it is Mr. Semonian's job as City of Alexandria Clerk of Court.

13. On October 7, 2011, I received an email from Mr. Sengel acknowledging my letter.

14. On October 11, 2011, when Plaintiff got to court she was informed by the assistant clerk Janice Grenadier would be allowed to speak to the Regular Grand Jury. Sengel heard it.

15. When Judge Haddock came into the Court shortly after that ~ Plaintiff was informed she would not be allowed in front of the Regular Grand Jury, contrary to the Clerk docket.

16. On 11 October 2011, a violation of Plaintiff's Rights under this Constitution were perpetrated by Defendants Sengel and Haddock by denial of access to the Grand Jury to make a Presentment for Bill of Indictment for Forging, Uttering, and Forging a Public Document against Defendant Ilona Ely Grenadier, remarried widow of the former City of Alexandria Chief Judge Albert Grenadier, and her law firm Defendant Grenadier, Anderson, Starace, Duffett, and Keisler, P.C.

17. Prior actions by Defendant Brown and employees of the Alexandria Courts have denied JWG a Trial by Jury.

18. Plaintiff JWG first contacted the Virginia State Bar (VSB) in 2008 about the forged signature on a Trust Amendment that Defendant Ilona Ely Grenadier used to "loot" the Trust, the same trust that later Bar member Jim Arthur looted and was convicted for in Federal Court. Both Bar employees Defendants McCauley and Davis, and the VSB, have aided the cover-up of Bar member crimes.

19. *"Justice Delayed is Justice Denied."* dates back to *anno domini* 1215, Article 40 of the Magna Carta. Those wise words grace the entranceway sculpture, and have become the "motto" of the Alexandria Division of the United States District Court for the Eastern District of Virginia, known by some as the "Rocket Docket" suggesting an absence of delay in the pursuit of Justice, where this case of lawyer-trustee embezzlement is being pursued, and where an associated lawyer-trustee of Defendant Grenadier was convicted in 1993 for similar acts. Yet with Defendant RICO actions this case is also *"Justice Derailed is Justice Denied."*

20. WHEREFORE, plaintiff prays this Court issue sanctions based on Federal Rules of Civil Procedure Rule 11 on Defendant Alexandria Attorney Randy Sengel, and provide Injunctive Relief:
   1. As *Pro Se*, Plaintiff JWG is at a severe disadvantage in seeking a fair trial given the Defendants are not "common citizens", but rather are Bar members, trained in the law, and Virginia State Bar members, therefore Plaintiff prays this Court will assign a Court Appointed Attorney to provide "assistance of counsel", an attorney not a member of the Virginia State Bar, due to Conflict of Interest thereby, but permitted to practice by provision of *Pro Hac Vice*, an "honest, fearless of judges and fearless of the Virginia State Bar" out-of-state lawyer, to provide "assistance of counsel" to overcome the years of "OBSTRUCTION OF JUSTICE" by Bar members of Alexandria and Virginia.

21. And WHEREFORE, plaintiff prays this Court issue equitable relief as follows:
   1. Issue a Writ of Mandamus to Order a *de novo* Trial by Jury of the trial of 9 July 2008, NEARLY FOUR YEARS AGO, when a Jury Trial was Denied by Defendant Brown. *Justice Delayed is Justice Denied.* Alexandria judges and prosecutor have denied Justice.
   2. Issue injunctive relief commanding a further, detailed forensic investigation into the collusion, or racketeering of the named Defendants above, building on FBI files and investigation of convicted Bar member Jim Arthur, Trustee, and Ilona Grenadier, Agent and Cashier of the Sonia Grenadier Trust.
   3. Issue declaratory relief as this Court deems appropriate and just.
   4. Issue other relief as this Court deems appropriate and just.
   5. Award plaintiff her costs of litigation.

I RESPECTFULLY ASK FOR THIS:

Janice Wolk Grenadier
Plaintiff, *Pro Se*

## CERTIFICATE of SERVICE

I hereby certify that a true copy of the foregoing was filed at the United States District Court, Eastern District of Virginia, Alexandria Division, on Friday, 13 January in the Year of Our Lord Jesus 2012.

*/s/ Janice Wolk Genadier*
Janice Wolk Genadier
Plaintiff, *Pro Se*

# Supreme Court of Virginia

**To All To Whom These Presents Shall Come — Greetings:**

**Know Ye,** That I, CYNTHIA D. KINSER, Chief Justice of the Supreme Court of Virginia, by virtue of authority vested in me by law, do hereby designate —

THE HONORABLE RICHARD B. POTTER
JUDGE OF THE THIRTY-FIRST JUDICIAL CIRCUIT
TO PRESIDE IN THE CIRCUIT COURT
OF THE CITY OF ALEXANDRIA

To preside over grand jury proceedings
on Monday, February 13, 2012.

To Assist

THE JUDGES OF THE EIGHTEENTH JUDICIAL CIRCUIT
in the performance of their duties.

It is so Ordered. Given under my hand and seal this 21st day of November 2011.

_____ (seal)
Chief Justice of the Supreme Court of Virginia

---

**SUPREME COURT OF VIRGINIA**

OFFICE OF THE EXECUTIVE SECRETARY
100 NORTH NINTH STREET
RICHMOND, VIRGINIA 23219-2334
(804) 786-6455

November 21, 2011

The Honorable Richard B. Potter, Judge
Thirty-first Judicial Circuit
Prince William Circuit Court
Circuit Court Chambers
9311 Lee Avenue
Manassas, VA 20110

Dear Judge Potter:

Enclosed is a designation order authorizing you to sit in Alexandria Circuit Court on Monday, February 13, 2012. You will be presiding over the regular session of the Grand Jury. There is one matter, **In Re: Grand Jury Request of Janice W. Grenadier,** scheduled that the Judges have recused themselves from hearing.

By copy of this letter to Chief Judge Haddock and Mr. Semonian, I am advising them of your agreement to preside on February 13th. Ms. Diane Fiske, court administrator, is available to assist you. Please contact Ms. Fiske at 703-746-4123

Thanks again for your assistance.

Sincerely,

Patricia O. Davis

POD:pbk
Enclosure

cc: The Honorable Donald M. Haddock, Chief Judge
The Honorable Edward Semonian, Jr., Clerk
Ms. Diane Fiske, Court Administrator

---

Let there be NO question,
this ORDER of the Chief Justice
to Judge Potter is to preside over
a Grand Jury in Alexandria
for the specific case of
Janice W. Grenadier !

Alexandria Attorney Sengel
is "GOING BEHIND THE BACK"
of the Chief Justice to SUBVERT
her legal and proper ORDER !




# COMMONWEALTH OF VIRGINIA

S. RANDOLPH SENGEL
COMMONWEALTH'S ATTORNEY

KRISTA G. BOUCHER
CHIEF DEPUTY COMMONWEALTH'S ATTORNEY

MOLLY SULLIVAN
DEPUTY COMMONWEALTH'S ATTORNEY

DONALD HARRISON-WRIGHT
OFFICE ADMINISTRATOR

*Commonwealth's Attorney*
*City of Alexandria*
520 King Street, Suite 301
Alexandria, VA 22314-3140
alexandriava.gov/commattorney
(703) 746-4100
Fax (703) 746-4466

ASSISTANT
COMMONWEALTH'S ATTORNEYS

CATHRYN EVANS
BRYAN L. PORTER
SHELBY G. CAPUTO
KARIN RILEY
LAURA M. GREENE
DAVID A. LORD
ANGELA DOUGHERTY
JEFFREY BURTKA
ANDREW S. CRIADO
JESSICA BEST SMITH

January 4, 2012

The Honorable Richard B. Potter
Judge, Prince William County Circuit Court
Judicial Center, 3rd Floor
9311 Lee Avenue
Manassas, Virginia 20110

Re: Alexandria Circuit Court Regular Grand Jury Session, February 13, 2012

Dear Judge Potter:

I am advised that you have been designated by the Supreme Court of Virginia to preside over a session of the regular Circuit Court Grand Jury in the Alexandria Circuit Court on February 13, 2012. The occasion of your designation arises from the request of a private citizen to make a presentment to a regular grand jury, and the recusal of the Alexandria Circuit Court judges from the proceeding. I write to make known the position of the Commonwealth's Attorney's Office regarding certain matters that may arise during the grand jury session.

By way of background, On October 11, 2011, Janice Wolk Grenadier appeared at a regular session of the grand jury in Alexandria Circuit Court. She was accompanied by James Manship, who represented in response to a question from the presiding judge that he was "counsel". Before the grand jury began hearing witnesses, Mr. Manship indicated, among other things, that he and Ms. Grenadier desired to make presentments to the grand jury concerning certain indictments they were seeking for an individual accused by Ms. Grenadier of criminal acts. (These indictments were not prepared by the Commonwealth's Attorney's Office). It was also apparent from pleadings previously filed by Ms. Grenadier that she desired to make complaint to the grand jury regarding the conduct of the Alexandria Circuit Court, and to request the regular grand jury seek impaneling of a special grand jury. (See attached pleading previously filed by Ms. Grenadier.)

Based on information previously furnished to the Commonwealth's Attorney's Office, it appears that Ms. Grenadier's complaints concern (1) the manner in which the Alexandria Circuit Court handled a prior civil case in which Ms. Grenadier was a party; and (2) allegations of alleged criminal activity by others. Subsequent to her appearance in court on October 11, Ms. Grenadier filed a civil action in the United States District Court for the Eastern District of Virginia (Grenadier v. Semonian et. al.) which names as defendants the Clerk of the Alexandria Circuit Court, the Commonwealth's Attorney, two Circuit Court judges, including Judge Donald Haddock of the Alexandria Circuit Court, members of a local law firm, and employees of the Virginia State Bar, alleging "conspiracy to interfere with civil rights, illegal actions to deny access to grand jury, trial by jury and more" and seeking injunctive relief.

Because it appeared Ms. Grenadier's complaints in part concerned the conduct of Alexandria Circuit Court judges, the presiding Judge Donald M. Haddock indicated that he and the other Alexandria Circuit Court judges would recuse themselves from ruling on the propriety of Ms. Grenadier's request to appear before the grand jury. I expect Ms. Grenadier will appear in Circuit Court on February 13, 2012 and ask to be allowed to make a presentment to the regular grand jury. For the following reasons, I do not believe it is appropriate to permit her to do so. Virginia law reveals no authority which would permit a private citizen to appear and testify before a grand jury merely because he or she desires to do so.

*I. May a private citizen prepare and present a bill of indictment for consideration by a regular grand jury?*

Such a process is not authorized by the Code of Virginia. Private citizens do not have a right to appear of their own volition before a regular grand jury to seek an indictment. The statutory function of a regular grand jury regarding consideration of indictments is explicitly described as "to consider bills of indictment prepared by the attorney for the Commonwealth" (See, Virginia Code Section 19.2-191(1). Language in Virginia Code Section 19.2-201 indicates the Commonwealth's Attorney is responsible for summoning witnesses which he may deem material to give evidence before the grand jury related to bills of indictment. I do not deem Ms. Grenadier to be a material witness regarding any of the bills of indictment to be presented by the Commonwealth's Attorney at this session of the grand jury.

Ms. Grenadier delivered copies of her proposed indictments to the Commonwealth's Attorney's Office on October 14, 2011. In my opinion, they are not supported by probable cause and should not be presented to a grand jury.

In accord is an Attorney General Opinion issued in 1971 which concludes that a citizen, as a complaining witness, may not appear before a grand jury and allege a criminal violation without a presentment being made by the Commonwealth's Attorney. A copy of that opinion is attached.

*II. May a private individual appear of her own volition before a regular grand jury and make a presentment asking the regular grand jury to recommend impaneling of a special grand jury?*

Presumably, based on the pleading previously filed by Ms. Grenadier, it is her intention to make a presentment which includes a request that the regular grand jury members recommend to the court the impaneling of a special grand jury. Such a request by a private citizen does not appear consistent with the statutory mechanism for impanelling a special grand jury. Virginia Code Section 19.2-206 provides that:

A. Special grand juries may be impanelled by a circuit court (i) at any time upon its own motion, (ii) upon recommendation of a minority of the members of a regular grand jury that a special grand jury be impanelled, to perform the functions provided for in subdivision (2) of § 19.2-191, or (iii) upon request of the attorney for the Commonwealth to investigate and report on any condition that involves or tends to promote criminal activity and consider bills of indictment to determine whether there is sufficient probable cause to return each such indictment as a "true bill."

B. A special grand jury shall be impanelled by a circuit court upon the recommendation of a majority of the members of a regular grand jury if the court finds probable cause to believe that a crime has been committed which should be investigated by a special grand jury impanelled to perform the functions provided for in subdivision (2) of § 19.2-191.

The statute does not permit or contemplate a private citizen appearing before a regular grand jury of his or her own volition and asking that body to seek to be impanelled as a special grand jury. While Ms. Grenadier has previously requested that I ask the court to impanel a special grand jury, I have declined that request. She has also asked the court to impanel a special grand jury and the court has declined to do so.

*III. May a private citizen appear of her own volition before a regular grand jury and make a presentment which alleges a "condition that involves or tends to promote criminal activity, either in the community or by any governmental authority agency or official thereof?"*

The second function of a grand jury, set forth in Virginia Code Section 19.2-191, is to "investigate and report on any condition that involves or tends to promote criminal activity, either in the community or by any governmental authority, agency, or official thereof." Of course this function may be exercised by either a special grand jury or a regular grand jury. In the exercise of this function, there is no authority for the position that a private citizen may appear in front of a regular grand jury merely because he or she desires to do so. Section 19.2-202 of the Code of Virginia provides that presentments may be made to a regular grand jury either upon the information of two or more of its own body, or on the testimony of witnesses called on by the grand jury, or sent to it by the court. None of these options give rise to the right of an individual to appear *sua sponte* before a regular grand jury.

In addition, the Handbook for Virginia Grand Jurors, a publication of the Supreme Court of Virginia, notes that "if any person who is not listed on the bill of indictment…wants to testify he or she must obtain permission from the judge. Even then, the Grand Jury may refuse to hear this testimony unless the judge orders that it be heard." (See, Handbook for Virginia Grand Jurors, page 6, www.courts.state.va.us/gjury/cover.htm).

The Code offers scant guidance as to how a court would decide whether or not to send a witness in to testify before a regular grand jury. At the very least it would seem appropriate that the court should at least have some inkling of the substance of Ms. Grenadier's complaint so it can make a decision as to whether or not it is even appropriate for presentation to a grand jury. A grand jury is a creature of statute, and it has only those powers conferred upon it by the General Assembly. Conduct which is properly the subject of scrutiny under these circumstances must arise from a condition that involves or tends to promote "criminal activity." Criminal activity does not include civil wrongs, violations of ethical rules or professional standards,

negligent acts, or moral indiscretions unless those acts transgress a specific criminal statute. Likewise a grand jury has no authority to review prior judicial decisions in civil or criminal cases simply because someone is dissatisfied with the results of earlier litigation. It does not appear that Ms. Grenadier's complaints fall within the scope of matters which would properly be the subject of grand jury inquiry.

In the event Mr. Manship elects to accompany Ms. Grenadier on February 13, 2012, the court should note that by his own admission, he is not a lawyer. He cannot be permitted to advocate the interests of another before a tribunal. Practicing law without a license to do so in Virginia is a class one misdemeanor. (Virginia Code Section 54.1-3904). Mr. Manship argued to the court on October 11 that he was permitted to act as an "attorney" for Ms. Grenadier pursuant to the provisions of the Uniform Power of Attorney Act, §§ 26-72 – 26-116, Code of Virginia. He clearly misconstrues this statute. The fact that Ms. Grenadier may have executed a power of attorney in favor of Mr. Manship may convey to him certain powers, but the right to practice law is not among them.

In conclusion, I believe it is important for the court to carefully limit requests by private citizens to appear before a regular grand jury. There are obvious and strong public policy reasons why presentment of bills of indictment is solely in the discretion of the Attorney for the Commonwealth, (Virginia Code 19.2-191) and why law enforcement officers are directed to report violations of penal statutes to the attorney for the Commonwealth for review and institution of "proper proceedings". (Virginia Code 19.2-201). It is the "structure of tripartite government" that "creates a judicial presumption in favor of 'broad' prosecutorial discretion," *Boyd v. County of Henrico*, 42 Va. App. 495, 521, 592 S.E.2d 768, 781 (2004) (*en banc*) (citations omitted) *Bishop v. Commonwealth* 49 Va. App. 251, 260, 639 S.E.2d 683, (2007). The most important responsibility of a prosecutor is to make certain that criminal investigations and criminal charging decisions are premised on proper foundation and sufficient evidence, and are not the product of personal agenda or factional purpose. The court bears an equally important responsibility to see that the powers of its tribunal are properly and appropriately utilized for the purposes for which they are intended. Thank you for your consideration of these matters.

Very truly yours,

S. Randolph Sengel
Commonwealth's Attorney

Cc: Janice W. Grenadier

**Grenadier v. Semonian, Sengel, Haddock, Grenadier, Grenadier law firm, VSB employees   page 8 of 12**

Dario J. Broccolino
State's Attorney

F. Todd Taylor, Jr.
Deputy - Administration

Mary V. Murphy
Deputy - Operations

Brendan J. Clary
District Court Division

Lars C. Weathersbee
Juvenile Division



**Office of the State's Attorney for Howard County**
Carroll Building
3450 Courthouse Drive
Ellicott City, Maryland 21043

Circuit Court Division
(410) 313-2103
(410) 313-3294 FAX

District Court Division
(410) 313-3100
(410) 313-3144 FAX

Victim Witness
(410) 313-3153

Juvenile Division
(410) 313-2142

Diversion Program
(410) 313-3017
TTY (410) 313-2323

August 18, 2008

Mr. David A. Wiggins
c/o 7002 Surrey Drive, #2
Baltimore, MD 21215

HAND DELIVERED

Dear Mr. Wiggins:

Pursuant to your request to appear before the Grand Jury for Howard County, Maryland, we have scheduled you for Wednesday, August 20, 2008.

Please be at this office by 11:30 AM. The meeting will take place immediately at the conclusion of the Grand Jury's normal docket.

Yours truly,

Dario J. Broccolino
State's Attorney for Howard County

DJB/jag

> While admittedly NOT in Virginia, these letters show how a State Attorney the equivalent position to Virginia's Commonwealth Attorney is VERY helpful and accommodating to a Citizen to present before the Grand Jury.

Dario J. Broccolino
State's Attorney

F. Todd Taylor, Jr.
Deputy - Administration

Mary V. Murphy
Deputy - Operations

Brendan J. Clary
District Court Division

Lars C. Weathersbee
Juvenile Division



**Office of the State's Attorney for Howard County**
Carroll Building
3450 Courthouse Drive
Ellicott City, Maryland 21043

Circuit Court Division
(410) 313-2118
(410) 313-3294 FAX

District Court Division
(410) 313-3100
(410) 313-3144 FAX

Victim Witness
(410) 313-3153

Juvenile Division
(410) 313-2142

Diversion Program
(410) 313-3017
TTY (410) 313-2323

August 20, 2008

Mr. David Wiggins
7002 Surrey Drive #2
Baltimore, Maryland 21215

Dear Mr. Wiggins:

It will not be possible to reschedule your meeting with the foreperson of the Grand Jury to September 3. On that day, at the conclusion of their consideration of the cases we will be presenting to them, the entire Grand Jury will be, as required by law, going to the local detention center for an inspection of the facility.

We can arrange for you to meet on September 17, 2008. I suggested 11:30 for today's meeting because I estimated that would be the time they would have concluded their review of the cases for this session, and I did not want to inconvenience you by having you wait around until they were finished. At this point, I have no idea how long the review of cases will take on September 17, so your coming at 9:00 A.M. will be fine, but be prepared to wait for at least one hour - around 10 A.M. is the earliest they have ever concluded.

Please let me know if you will be available on the 17th of September. If not, please remember, the Grand Jury meets every other Wednesday in Howard County. We can schedule your meeting for any of the appropriate Wednesdays.

Yours truly,

Dario J. Broccolino
State's Attorney
for Howard County



*Burger: He told the Royal Commission on Legal Services in London in July that, based on his experience in trial courts, "something less than half of the lawyers who appeared there were minimally qualified to perform their function."*

On Page 26 of the January 1978 issue of the **ABA Journal** (see inset front cover) is written:

"Burger said the "sounding" he took from judges and lawyers in federal and state courts revealed that *"the most pessimistic view was than only 25 per cent of lawyers appearing in our courts were really qualified to represent their clients properly and to move the case along adequately. Some judges placed it as high as 75 per cent. Somewhere near the midway mark is probably correct, and it will vary to some extent from place to place."*

Burger noted some improvement in the attitudes within law schools toward teaching advocacy skills as well as *"some emphasis finally, I am glad to say, on ethics and deportment."* But, he said, the traditional answer from law school professors has been *"We are not running a trade school." "That lofty response,"* Burger said, *"really does not wash... They should be trained in their trade which is trial advocacy."*

In London, responding to a question, Chief Justice Burger said, *"Our discipline is barely something more than non-existent; discipline of lawyers for misconduct is in an abysmal state in our country."* (Discipline should be done by a Grand Jury of Private Citizens, not Bar members.)

Exhibit A: Grenadier v. Semonian, Sengel, Haddock, Brown, Grenadier, Grenadier Law Firm and VSB Employees

Case 1:11-cv-01136-GBL -JFA  Document 6  Filed 01/13/12  Page 11 of 12 PageID# 44

**19 Years ago, but in Virginia**
**NO time limit to prosecute**
**a FELONY by Ilona Grenadier...**

THE WASHINGTON POST ... **SATURDAY, OCTOBER 23, 1993**

**Grenadier, Anderson, Starace & B.S. Duffett ("GAS & B.S.")**





**Ilona Ely Grenadier based on a FORGED signature of Sonia Grenadier became TRUSTEE and then "looted" over $90,000.00 from this one Trust.**



**So, both "Trustee" Jim Arthur and "Trustee" Ilona Grenadier looted the Sonia Grenadier Trust first for over $100,000 then for over $90,000.**

# Lawyer Gets 5 Years For Bilking Elderly

## $2.4 Million Embezzled From 8 Clients

By Charles W. Hall
Washington Post Staff Writer

In a courtroom crowded with relatives of his elderly victims, a former Arlington lawyer was sentenced to five years in federal prison yesterday for embezzling $2.4 million from eight trust and estate accounts.

James G. Arthur, 46, who prosecutors said had systematically looted the accounts of eight clients since the mid-1970s and used almost all of the money to support a lavish lifestyle, had pleaded guilty in August to embezzlement, money laundering and income tax evasion.

Judge Claude M. Hilton, citing the size and duration of Arthur's thefts, gave Arthur a five-year sentence with no chance of parole, close to the maximum allowed under the plea agreement.

Arthur, who resigned from the Virginia State Bar last year, "violated the trust of his clients and the members of his two [law] firms," U.S. Attorney Helen F. Fahey said. "This sentence sends a message to attorneys that if they violate their trust, they will be treated like anyone else."

Several relatives of elderly victims bilked by Arthur hailed the sentence, but said they still had not received complete restitution from the law firms for which Arthur had worked.

"We're very happy with the sentence," said Robin Grenadier, a Justice Department employee whose nearly blind grandmother, Sonia Grenadier, 86, lost more than $100,000 from a trust account handled by Arthur. "He's been stealing for 20 years, and he's finally getting his comeuppance."

Once regarded as one of Virginia's most prominent trust and estate lawyers, the balding and bespectacled Arthur sat silently in a charcoal-gray suit, speaking only briefly before the sentencing.

"I accept full responsibility," Arthur told Hilton. "I have been dismayed by the broad ripples of what I've done, and its effects on the families."

Arthur embezzled the money while working for Fagelson, Schonberger, Payne and Arthur in Fairfax, and later at a Northern Virginia office of Mays and Valentine, a Richmond-based firm.

According to a presentencing memorandum filed by prosecutors, Arthur's retiring demeanor disguised a life of excess. The memorandum said that "while some of the money went into investments, by and large Arthur simply enjoyed the good life at the expense of others."

The memo said that Arthur annually transferred hundreds of thousands of dollars from clients' accounts into a personal checking account, and that audits found little money left.

The document said that Arthur spent nearly $160,000 in clients' money on American Express bills alone in 1989 and 1990. The billings showed "innumerable purchases from places such as ... Bailey, Banks, & Biddle, Waldorf Astoria ... Black, Starr & Frost, Neiman-Marcus, Saks Fifth Avenue, etc.; the list goes on and on."

Arthur reported his crimes to prosecutors last year, after one of his clients learned that a pension account that was supposed to contain $1.1 million had just $3,000 in it, said Assistant U.S. Attorney David A. Barger. "He knew the hammer was about to fall," Barger said.

Robin Grenadier said her family has sued both of Arthur's law firms, seeking to hold them liable for acts of alleged negligence involving the sale of some of her grandmother's property.

A relative of another elderly victim, who asked not to be identified, said his family also had not yet settled with Mays and Valentine.

Howard Gutman, an attorney for Mays and Valentine, said the firm had worked aggressively to trace all losses caused by Arthur and had offered each of the victims total reimbursement with interest.

---

provide 15 hours of training for foster parents and conduct screening and approval with set periods for

# U-Md. Bans College Par Fraternity

OMEGA, From B1

punched, spat upon, drizzled hot wax and struck with wo paddles, belts, whips and brushe

Five pledges suffered seriou juries, including a broken ankl ruptured spleen, a collapsed lur concussion, a ruptured eardru cracked rib and a stress-rel stomach disorder, the police sa:

At Omega Psi Phi's nati headquarters in the District, ecutive Director John S. Epps unavailable for comment yes day.

The police report and interv: with one injured pledge paint a portrait of the physical and e tional pain some men endure to the social status associated joining a fraternity.

The seven pledges were fo to eat vomit, drink from toilets ercise to the point of exhaus and do homework and buy meal the brothers.

The abuse could occur at time, in dorm rooms or off can the pledge said.

"By the time you are on the [pledging], you have spent so r time, money and energy on it, don't want to walk away, espec if that's what the brothers are ing to get you to do," said the mer pledge, who requested nymity out of his concern fo: safety.

Two dozen of the College chapter members were charge late May with seven counts e. criminal hazing, a misdeme that carries a maximum penal six months in jail and a $500 fn pretrial hearing on the ca: scheduled for next month in P George's Circuit Court.

Fifteen fraternity members were students at the time of li leged hazing also face expu from the university.

The pledges might also be: plined for lying to police and prs officials about their inv ment with Omega Psi Phi, p said.

---

N.C. Man Gets

---

**Exhibit E** <u>Washington Post</u> "Lawyer Gets 5 Years for Bilking Elderly", October 23, 1983

**Federal Exhibit B - (denied) Grand Jury Exhibit E - "Lawyer Gets 5 Years for Bilking Elderly"**

Grenadier v. Semonian, Sengel, Haddock, Grenadier, Grenadier law firm, VSB employees   page 11 of 12

**Exhibit A**

AMENDMENT TO TRUST AGREEMENT

This Amendment to Trust Agreement made and entered into this 30th day of November, 1983, between Sonia Grenadier, hereinafter called the Grantor, and Albert H. Grenadier and Ilona E. Grenadier, hereinafter called the Trustees.

Whereas, the Grantor and Albert H. Grenadier as Trustee entered into a Trust Agreement dated May 2, 1975; and

Whereas, the Grantor desires to name Ilona E. Grenadier as an additional trustee, in the event the original Trustee is unable to perform his duties under the Trust Agreement,

Now, therefore, witnesseth the following:

1. That Ilona E. Grenadier is named an additional Trustee and shall have all of the rights, powers and obligations of the original Trustee heretofore appointed.

2. That either Trustee shall have the right to take any action required in furtherance of the Trust without the necessity of the other joining therein.

3. That in all other respects the Trust Agreement of May 2, 1975 shall remain the same.

In witness whereof, the following signatures and seals have been affixed hereto on the date first above written.

**Contrast the S in both signatures, then compare the "ier" to end the last name "Grenadier", Sonia with Ilona...**

STATE OF VIRGINIA,

**What is the significance?**

The Amendment to Trust Agreement of 30 November 1983, with the **FORGED signature of Sonia Grenadier**, in item 1. stated, **"That Ilona E. Grenadier is named as an additional Trustee..."**

Two years later Ilona's husband Judge Albert Grenadier died, and soon Ilona assumed the function of Trustee. Then lawyer Ilona proceeded to "loot" the Sonia Grenadier Trust created to provide for Sonia's her descendants, eventually to include Abigail and Madeline Grenadier in the amount of over $90,000.

In October 1993 an Interim Trustee, Jim Arthur, was indicted, and convicted for looting other Trusts for which he was a Trustee (see Exhibit E), a preliminary indicator seen by his cover-up attitude *"we could all stick our tongues in our cheeks, ignore the basic circumstances..."* but actually his letter of December 6, 1985, Exhibit C, identified the problem of the invalid Amendment to the Trust Agreement - *"the simple mechanics of the Trust."*, and Ilona serving as *"cashier, without any authority to do so,..."*.

**§ 18.2-168. Forging public records, etc.**

If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of **a Class 4 felony.**

(Code 1950, § 18.1-92; 1960, c. 358; 1975, cc. 14, 15; 1976, c. 146.)



Sonia Grenadier with Abigail Grenadier, her Great-Granddaughter, born 6 July 1990
Madeline Grenadier born 6 November 1991

**Exhibit B (signature part only)**

IN WITNESS WHEREOF, the following signatures and seals have been affixed hereto on the date first above written.

STATE OF VIRGINIA
CITY OF ALEXANDRIA, To-wit:

The foregoing instrument was acknowledged before me this ___ day of May, 1975, by SONIA GRENADIER, Grantor and ALBERT H. GRENADIER, Trustee.

My commission expires: _____

**Exhibit C (parts)**

FAGELSON, SCHONEKRAUT, PAYNE AND [illegible]

December 6, 1985

Ilona Ely Grenadier
4034 Sharp Place
Alexandria, Virginia 22304

Re: Sonia Grenadier

Dear Ilona:

The first problem is simple mechanics of the Trust. While you or you and David are now handling the assets, on paper Jack Davitt is the substituted Trustee and I am the second substitute Trustee. I would think that at a minimum we should get Jack to resign and then either have me serve and take over the handling of it, have Sonia direct me to serve as Trustee, but appoint you and David as custodians therefor and let the two of you operate it, or have me resign and have you appointed Trustee. This last one is in line with the amendment that Albert attempted to prepare that was clearly nonoperative, although I suppose we could all stick our tongues in our cheeks, ignore the basic circumstances, follow the paperwork and adopt the position that Albert's appointment was a good appointment, and let you serve as Trustee under that. However, if we are going to do that, I think we should agree that that is what we are doing. The problem this obviously presents is that with you serving as cashier, without any authority to do so, you subject yourself to potential questions of usage and liability of the funds by all of the

**Exhibit D - Comparison of Signatures - Forgery v. Original - and Exhibits A, B, and C**
**Federal Exhibit C - (denied) Grand Jury Exhibit D - Comparison of Signatures - Forgery v. Original**

Grenadier v. Semonian, Sengel, Haddock, Grenadier, Grenadier law firm, VSB employees  page 12 of 12